THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

FANNIE MAE,

    Plaintiff,

v.

    Case No. 1:21-cv-25

CSL OSHKOSH, LLC and
CSL OSHKOSH MANAGEMENT, LLC,

    Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Motion for Default Judgment having been filed by the Plaintiff, Fannie Mae, and the Court having considered the pleadings, declarations, and other documents now on file, the Court hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1.    The Plaintiff, Fannie Mae, is a corporation organized and existing under the laws of the United States. Fannie Mae is a citizen of the District of Columbia for purposes of jurisdiction. 12 U.S.C. § 1717(a)(2)(B).

2.    The Defendants, CSL Oshkosh, LLC (which may also be referred to herein as the "Borrower") and CSL Oshkosh Management, LLC (which may also be referred to herein as the "Manager") are both Delaware limited liability companies with principal places of business in Texas. The sole member of each of the Defendant LLCs is Capital Senior Living Properties 4, Inc., a Delaware corporation with its principal place of business in Texas.

3.    This foreclosure action arises out of and seeks to enforce rights with respect to a senior housing community in Oshkosh, Winnebago County, Wisconsin known as The Waterford

at Oshkosh (the "**Facility**"). Its address is 1816 Vinland Street and 1010 & 1110 West Murdock Avenue, Oshkosh, Wisconsin 54901.

4. CSL Oshkosh, LLC borrowed funds (the "**Loan**") that are evidenced by a "Multifamily Note" originally payable to Berkadia Commercial Mortgage LLC dated April 5, 2011 in the original principal amount of $13,229,063.00 ("**Note**"). A copy of the Note is attached to the Complaint as **Exhibit A**. (Dkt. 1-1.)

5. The Loan and other obligations are also evidenced, documented, and secured by a Multifamily Loan and Security Agreement (the "**Loan Agreement**").

6. All rights of the lender under the Loan Agreement were assigned to Fannie Mae pursuant to the **Assignment of Collateral Agreements and Other Loan Documents,** which is attached to the Complaint as **Exhibit B.** (Dkt. 1-2.)

7. The obligations owed to Fannie Mae are also evidenced and secured by a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "**Mortgage**"). A copy of the Mortgage is attached to the Complaint as **Exhibit C.** (Dkt. 1-3.)

8. The Note was endorsed and assigned to Fannie Mae as shown by the endorsement on the last page of it, and the Mortgage was assigned to Fannie Mae as shown by the **Assignment of Mortgage**, a copy of which is attached to the Complaint as **Exhibit D.** (Dkt. 1-4.)

9. Exhibits A – D to the Complaint comprise the "**Loan Documents**" for purposes of these Findings of Fact and Conclusions of Law.

10. The Loan evidenced by the Note and the other obligations owed under the Loan Documents are secured (without limitation) by the Mortgage.

11. The Mortgage was recorded with the Register of Deeds for Winnebago County on August 6, 2014, as Document Number 1669173.

12. The Mortgage covers and grants to Fannie Mae a lien in the "Mortgaged Property" as that term is defined in the Mortgage, which includes, without limitation: (a) the "Land" located in Winnebago County, Wisconsin with a legal description shown on Exhibit A to the Mortgage; (b) the "Improvements" as that term is defined in the Mortgage; (c) the "Personalty" as that term is defined in the Mortgage; (d) all leases and rents; and (e) all other items and assets within the definition of "Mortgaged Property" in the Mortgage.

13. The mortgaged premises are described as follows:

PARCEL A:

THE SOUTH ONE-HUNDRED TWENTY (120) FEET OF THAT PART OF THE SOUTHWEST ONE-QUARTER (1/4) OF THE SOUTHEAST ONE-QUARTER (1/4) OF SECTION ELEVEN (11), IN TOWNSHIP EIGHTEEN (18) NORTH, RANGE SIXTEEN (16) EAST, IN THE TWELFTH (12TH) WARD, CITY OF OSHKOSH, WINNEBAGO COUNTY, WISCONSIN, LYING NORTH OF THE NORTH LINE OF MURDOCK AVENUE, EAST OF THE EAST LINE OF VINLAND STREET AND WEST OF THE EXTENDED WEST LINE OF WALNUT STREET.

AND

THE NORTH ONE-HUNDRED SEVENTY (170) FEET OF THE SOUTH TWO-HUNDRED NINETY (290) FEET OF THAT PART OF THE SOUTHWEST ONE-QUARTER (1/4) OF THE SOUTHEAST ONE-QUARTER (1/4) OF SECTION ELEVEN (11), IN TOWNSHIP EIGHTEEN (18) NORTH, RANGE SIXTEEN (16) EAST, IN THE TWELFTH (12TH) WARD, CITY OF OSHKOSH, WINNEBAGO COUNTY, WISCONSIN, LYING NORTH OF THE NORTH LINE OF MURDOCK AVENUE, EAST OF THE EAST LINE OF VINLAND STREET AND WEST OF THE EXTENDED WEST LINE OF WALNUT STREET (THE NORTH LINE OF THE SUBJECT PREMISES BEING THE SOUTH LINE OF PROPERTY CONVEYED BY DEEDS RECORDED IN DOCUMENT NUMBERS 688937 AND 715961).

PARCEL B:

LOTS THREE (3), FOUR (4), FIVE (5), SIX (6), SEVEN (7), EIGHT (8), NINE (9), TWELVE (12), THIRTEEN (13) AND FOURTEEN (14) OF BLOCK SIX (6) IN PLAT OF EICHSTADT SUBDIVISION, IN THE CITY OF OSHKOSH, WINNEBAGO COUNTY, WISCONSIN, LESS AND EXCEPTING PREMISES

CONVEYED IN WARRANTY DEED RECORDED AS DOCUMENT NO. 1130144 MORE PARTICULARLY DESCRIBED AS THE NORTH FIFTY-FIVE (55) FEET OF LOTS THREE (3) AND TWELVE (12) OF BLOCK SIX (6) AND THAT PORTION OF THE WEST ONE-HALF (1/2) OF VACATED CEDAR STREET LYING EAST OF AND WITHIN THE EXTENDED NORTHERLY AND SOUTHERLY BOUNDARY LINES OF SAID NORTH FIFTY-FIVE (55) FEET OF LOT TWELVE (12) OF BLOCK SIX (6), ALL IN EICHSTADT SUBDIVISION, IN THE TWELFTH (12TH) WARD, CITY OF OSHKOSH, WINNEBAGO COUNTY, WISCONSIN.

AND

LOTS THREE (3), FOUR (4), SEVEN (7) AND EIGHT (8) OF BLOCK SEVEN (7) IN PLAT OF EICHSTADT SUBDIVISION, IN THE CITY OF OSHKOSH, WINNEBAGO COUNTY, WISCONSIN, LESS AND EXCEPTING PREMISES IN WARRANTY DEED RECORDED AS DOCUMENT NO. 1130145 MORE PARTICULARLY DESCRIBED AS THE NORTH FIFTY-FIVE (55) FEET OF LOTS THREE (3) AND SEVEN (7) OF BLOCK SEVEN (7) AND THAT PORTION OF THE EAST ONE-HALF (1/2) OF VACATED CEDAR STREET LYING WEST OF AND WITHIN THE EXTENDED NORTHERLY AND SOUTHERLY BOUNDARY LINES OF SAID NORTH FIFTY-FIVE (55) FEET OF LOT THREE (3) OF BLOCK SEVEN (7), ALL IN EICHSTADT SUBDIVISION IN THE TWELFTH (12TH) WARD, CITY OF OSHKOSH, WINNEBAGO COUNTY, WISCONSIN.

AND

A PIECE OF LAND LYING IN THE SOUTHEAST ONE-QUARTER (1/4) OF SECTION ELEVEN (11), IN TOWNSHIP EIGHTEEN (18) NORTH, RANGE SIXTEEN (16) EAST, CITY OF OSHKOSH, WINNEBAGO COUNTY, WISCONSIN, DESCRIBED AS FOLLOWS:

STARTING AT AN IRON PIN IN THE CENTER OF THE CONCRETE HIGHWAY ON MURDOCK STREET AT THE INTERSECTION WITH ELMWOOD AVENUE, SPRUCE STREET AND VINLAND STREET ROAD; THENCE EASTERLY ON CENTERLINE OF MURDOCK STREET, 617.52 FEET TO A POINT 0.5 FEET EAST OF THE EAST LINE OF CEDAR STREET EXTENDED; THENCE NORTH AT RIGHT ANGLES 30 FEET TO THE NORTH LINE OF MURDOCK STREET, WHICH IS THE POINT OF BEGINNING; THENCE 237.62 FEET ALONG THE NORTH LINE OF MURDOCK STREET TO A POINT 5 FEET WEST OF THE WEST LINE OF BEECH STREET EXTENDED; THENCE NORTH AT RIGHT ANGLES, 190 FEET; THENCE WEST AT RIGHT ANGLES, 237.62 FEET; THENCE SOUTH AT RIGHT ANGLES, 190 FEET TO THE POINT OF BEGINNING.

AND

TOGETHER WITH THAT LAND COMPRISING THE VACATED PORTION OF CEDAR STREET EXTENDING TWO-HUNDRED SIXTY-FIVE (265) FEET NORTH FROM THE NORTH LINE OF MURDOCK STREET AS SHOWN IN THE PLAT OF EICHSTADT SUBDIVISION.

AND

TOGETHER WITH THAT PORTION OF VACATED CEDAR STREET LYING ADJACENT TO AND BETWEEN LOT TWELVE (12) OF BLOCK SIX (6) AND LOT THREE (3) OF BLOCK SEVEN (7) IN PLAT OF EICHSTADT SUBDIVISION, LESS AND EXCEPTING PREMISES CONVEYED IN WARRANTY DEEDS RECORDED AS DOCUMENT NO. 1130144 AND DOCUMENT NO. 1130145.
FOR INFORMATIONAL PURPOSES ONLY:

Property addresses:
Parcel A - 1816 Vinland Street, Oshkosh, Wisconsin 54901
Parcel B - 1010 & 1110 West Murdock Avenue, Oshkosh, Wisconsin 54901

14. Any interest of the Manager in the Mortgaged Property (both the real property and the personal property constituting Mortgaged Property) is junior and subordinate to the right, lien, security interest and other rights of Fannie Mae under the Mortgage and its other security agreements.

15. Pursuant to a separate Subordination, Assignment and Security Agreement dated as of August 4, 2014 signed by the Manager and the Borrower, Fannie Mae also holds a security interest in all UCC Collateral and in all leases and rents arising out of or associated with the Facility, to the extent of any interest which Manager may have therein.

16. The Mortgage also grants to Fannie Mae a security interest in the Mortgaged Property that is "UCC Collateral" as that term is defined in the Mortgage.

17. On May 6, 2020, Borrower executed a Forbearance Agreement as to which, by Extension Agreements, the Forbearance Termination Date was extended through July 31, 2020. Without limitation, the Borrower acknowledged in the Forbearance Agreement, as extended, that it was in default under the Loan Documents with Fannie Mae, including because it was delinquent in the payments due for the months of April, May, June, July and August 2020.

18. A receiver of the Facility was appointed in a proceeding, Civil No. 3:20-cv-2395 K, United States District Court, Northern District of Texas, Dallas Division. The

Agreed Order Appointing Receiver issued in that case, covering multiple facilities similar to and including The Waterford at Oshkosh Facility, provides, without limitation, that "Without further order of this Court, Fannie Mae with advanced notice to the Defendants as required by the existing loan documents and applicable law may foreclose by judicial or non-judicial means its interests in the Receivership Estate" (which includes all real and personal property the Receiver is managing). Borrower is a party to that Agreed Order. This underlying complaint and the Agreed Order Appointing Receiver from the Texas federal court case have been filed in the United States District Court for the Eastern District of Wisconsin.

19. The Loan Documents also provide that Fannie Mae is entitled to collect and Borrower agreed to pay "Enforcement Costs" as that term is defined in the Mortgage, and all costs and expenses incurred by Fannie Mae in pursuing its remedies and collecting the amounts owed to it by the Borrower, both before and after judgment.

20. The amounts owed to Fannie Mae under the Loan Documents as of the dates shown below are as follows:

| | | |
|---|---|---|
| a) | Principal as of 03/31/21: | $11,996,548.99 |
| b) | Interest to 03/31/21: | $605,706.00 |
| c) | Prepayment premium: | $1,825,299.00 |
| d) | Custodial & Administrative fees: | $300.00 |
| e) | Environmental Report fees: | $2,500.00 |
| f) | Property Condition Assessment fee: | $2,700.00 |
| g) | Appraisal fee: | $6,637.50 |
| h) | Acct & Deferred Unpaid Billings: | $160.78 |
| i) | Default Interest 4/01/20 – 03/31/21: | $487,111.00 |

| | | |
|---|---|---|
| j) | Late Charges: | $63,738.00 |
| k) | Receiver Advances | $173,768.20 |
| l) | Escrow Advances: | $231,218.00 |
| m) | Less Replacement Reserve Escrow | ($24,438.65) |
| n) | Less unapplied funds | ($86,543.81) |
| o) | Subtotal as of dates shown: | $15,311,705.01 |

Additional attorneys' fees as permitted under the loan documents are:

    p) Attorneys' fees and costs: $171,729.87;

    p) Receiver's fees and costs: $20,000.00;

                  Total as of March 31, 2021: $15,503,434.88.

21. Borrower has failed to pay the foregoing amounts due to Fannie Mae.

22. Fannie Mae filed this civil action to enforce its rights under the Loan documents on January 6, 2021. (Dkt. 1.)

23. CSL Oshkosh, LLC was served with an authenticated copy of the Summons and Complaint on January 13, 2021, as reflected by the proof of service filed on January 21, 2021. (Dkt. 6.)

24. CSL Oshkosh, LLC's answer to the Complaint was due February 3, 2021.

25. CSL Oshkosh, LLC, being a Delaware limited liability company, is not a minor, an incompetent person, or serving in the armed forces.

26. CSL Oshkosh Management, LLC was served with an authenticated copy of the Summons and Complaint on January 13, 2021, as reflected by the proof of service filed on January 21, 2021. (Dkt. 5.)

27. CSL Oshkosh Management, LLC's answer to the Complaint was due February 3, 2021.

28. CSL Oshkosh Management, LLC, being a Delaware limited liability company, is not a minor, an incompetent person, or serving in the armed forces.

29. Each Defendant has failed to appear, plead, or otherwise defend within the time allowed pursuant to Fed. R. Civ. P. 12(a) and, therefore, each Defendant is now in default.

30. The Clerk entered default against Defendants. *See* March 2, 2021 Docket Text Entry ("Clerk's ENTRY OF DEFAULT as to CSL Oshkosh LLC, CSL Oshkosh Management LLC.").

31. A lis pendens was filed with the Winnebago County Register of Deeds and recorded on March 1, 2021 as Document No. 1844314. A copy was filed with this Court on March 18, 2021. (Dkt. 12.)

32. The Winnebago County Sheriff has significant experience and is well qualified to carry out foreclosure sales in Winnebago County, where the Mortgaged Property is located.

33. The Winnebago County Sheriff maintains on its website a page advertising all sales (*available at*: https://www.co.winnebago.wi.us/sheriff/sales), oversees numerous foreclosure sales each month and has assigned personnel managing all aspects of the foreclosure sale process. The sales are easily accessible to the public. Given the regularity of foreclosure sales by Winnebago County Sheriff, a foreclosure sale it conducts will likely maximize the sale price at auction.

34. In another mortgage foreclosure case, federal courts in Wisconsin have entered an Order for Judgment and Judgment of Foreclosure and Sale on neighboring properties authorizing a county sheriff instead of the U.S. Marshal to carry out the foreclosure sale. *See, e.g., Bank of*

*Am., N.A. v. Martinson*, 828 F.3d 532, 533 (7th Cir. 2016) ("The [United States District Court for the Western District of Wisconsin] entered a judgment of foreclosure and ordered sale of the property at a sheriff's auction after the time for redemption by the owners had expired."); *Wells Fargo Bank, N.A. v. Moore*, 717 F. App'x 635 (7th Cir. 2018) ("After the [United States District Court for the Eastern District of Wisconsin] entered judgment permitting Wells Fargo to foreclose on the two properties that Moore had used to secure a $7.1 million dollar mortgage, the properties sold for $100,000 at a sheriff's sale."); *United Cent. Bank v. Wells Street Apartments, LLC et al.*, Case No. 11-CV-693, Docket No. 165, p. 11, ¶¶ 10, 11, 21 (E.D. Wis. January 30, 2014) (ordering foreclosure sale by the Sheriff of Outagamie County).

35. By appointing the Winnebago County Sheriff as special master to carry out the foreclosure sale, the cost of the sale will be significantly reduced. The commission on the sale by a marshal would be 3% on the first $1,000 and 1.5% on the remaining purchase price. *See* 28 U.S.C. § 1921(c)(1). The commission applies also to any amounts taken as setoff, which would apply to the plaintiff's credit bid at the sale. *See Hill v. Whitlock Oil Servs., Inc.*, 450 F.2d 170, 174 (10th Cir. 1971), *see also United States of America v. Petty Motor Company et al*. 767 F.2d 712 (10th Cir. 1985), *see also Prudential Ins. Co. v. Von Bergen*, 84 C 8568, 1986 WL 4736 (N.D. Ill. Apr. 16, 1986). For illustration purposes, based on a sale price of $1,000,000, the commission would be $15,015. In comparison, the Winnebago County Sheriff charges a flat fee of $150 per sale.

36. Appointment of the Winnebago County Sheriff as a special master to conduct the foreclosure sale will therefore maximize the recovery of the plaintiff and reduce the deficiency.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the amount in controversy (over $10 million) exceeds the minimum jurisdictional limits of this Court and Plaintiff and Defendants are citizens of different states.

2. This Court has personal jurisdiction and venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the mortgaged property is located in this district.

3. The Court finds that Plaintiff is entitled to default judgment.

4. The Court recognizes that, as a result of default judgment, all of the factual allegations in the complaint are "take[n] as true." *Wehrs v. Wells*, 688 F.3d 886, 888 (7th Cir. 2012). Further, a "default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. Spamhaus Proj.*, 500 F.3d 594, 602 (7th Cir. 2007).

5. The Court thus finds that Fannie Mae is the owner and holder of the Note, the assignee of the Loan Agreement and Mortgage, and is entitled to enforce all of the Loan Documents.

6. The Court finds that the Mortgaged Property includes and covers both personal property and real property; therefore, pursuant to Wis. Stat. § 409.604(1) Fannie Mae may proceed under part 6 of Wis. Stats. Chapter 409 (UCC Article 9) as to the personal property without prejudicing its rights as to the real property, or it may, at its option, proceed both as to the personal property and the real property in accordance with its rights with respect to the real property and have the personal property collateral sold with the real property collateral.

7. The Court finds that the Mortgaged Property, including without limitation, the real property and any leases, should be sold together in one sale, as to do otherwise would injure the interest of Fannie Mae.

8. The Court finds that, due to the defaults under the Loan Documents, the Loan was properly accelerated, all amounts owed to Fannie Mae under the Loan Documents are due, and Fannie Mae is entitled to foreclose under the Mortgage and recover against all of its real estate and personal property collateral. No further notice is required under any Loan Documents or otherwise for Fannie Mae to exercise its remedies including to foreclose and recover against its collateral.

9. The Court finds that, as a result of the defaults described above, Fannie Mae is entitled to judgment of foreclosure on the Mortgaged Property pursuant to the Mortgage and applicable law.

10. The Court finds that all interests, whatever they may be, of any Defendant in the Mortgaged Property including, without limitation, any interest of the Manager in any UCC Collateral or in the leases or rents, are junior and subordinate to the interest of Fannie Mae.

11. The Court finds that, unless Fannie Mae determines to include the UCC Collateral that is personal property in and with the real property in a sheriff's sale, Fannie Mae is entitled to take possession and control of, and to dispose of, the UCC Collateral under part 6 of Wis. Stat. ch. 409 and apply the proceeds of any such disposition against the obligations owed to Fannie Mae as alleged above.

12. The Court finds that all sums advanced by plaintiff for taxes, special assessments, insurance, or necessary repairs shall become additional indebtedness secured by the mortgages,

with interest thereon from the date of payment at the legal post-judgment rate, and may be added to the judgment by order at any time after the entry thereof.

13. The Court finds that the Plaintiff is entitled to a lien on the premises for the amount of any payments made for reasonable expenses incurred in pursuing the remedy of foreclosure and may obtain an order directing that the amounts so paid, with interest thereon from the date of payment at the legal post-judgment rate, be paid out of the proceeds of a foreclosure sale.

14. The Court finds that the Defendants and all persons claiming under them subsequent to the filing of the notice of the pendency of this action hereby are forever barred and foreclosed of all right, title, interest, claim and equity of redemption in and to the lands and premises or any part, parcel, or portion thereof.

15. The Court finds that if necessary to secure possession of said premises, the Clerk of Court, upon application by Plaintiff, shall issue a writ of assistance.

16. Pursuant to Fed. R. Civ. P. 53(a)(1)(c), the Court may appoint a special master in post-trial matters that cannot be timely addressed by an available district judge or magistrate judge. Federal courts have utilized special masters to conduct foreclosure sales under this subsection:

> Plaintiff seeks appointment of a special master to conduct the foreclosure sale, which is authorized by Rule 53(a)(1)(C), Federal Rules of Civil Procedure. Absent a basis for disqualification, federal courts routinely appoint special masters to conduct foreclosure sales.

*Stearns Bank, N.A. v. Farrell Homes, Inc.*, 2012 WL 360205, *3 (M.D. Fla. 2012). Other Federal Courts, such as the Southern District of Ohio, have promulgated rules anticipating the need for special masters to carry out foreclosure sales, under Fed. R. Civ. P. 53: "to

carry out foreclosure sales, the Court shall appoint special masters under Fed. R. Civ. P. 53." OH R USDCTSD Order 07-03.

17. The Court finds that the subject premises shall be sold at public sale by or under the direction of the Winnebago County Sheriff in accordance with the requirements applicable to foreclosure sales in Wisconsin.

18. Plaintiff may require, as a condition and term of the sale, that the purchaser at a foreclosure sale agree to continue to operate the subject premises in accordance with the terms of any program under mortgage insurance or assistance that was provided, or any applicable regulatory or other agreement in effect with respect to such property immediately prior to the time of the foreclosure sale. 12 U.S.C. § 3706(b)(1).

19. The Court adopts Plaintiff's Proposed Judgment.

Dated at Green Bay, Wisconsin this 27th day of April, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge